CAUSE NO. CV-17-1807

| | | |
|---|---|---|
| DONALD MARTINEK, & MARTINEK GRAIN & BINS, INC.,<br>*Plaintiff,* | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | GRAYSON COUNTY, TEXAS |
| CITY OF WHITEWRIGHT,<br>*Defendant.* | §<br>§<br>§ | 59TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION & REQUEST FOR PERMANENT INJUNCTION

Plaintiffs Donald Martinek and Martinek Grain & Bins, Inc. ("MGB") file their First Amended Petition and Request for Permanent Injunction ("Petition") as follows:

### I. DISCOVERY-CONTROL PLAN

1.  Plaintiffs intend to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 and affirmatively plead that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiffs seek monetary relief of over $100,000.00.

### II. CLAIM FOR RELIEF

2.  At this time, Plaintiffs seek monetary relief over monetary relief over $200,000 but not more than $1,000,000.

### III. PARTIES

3.  Plaintiff Donald Martinek is an individual and resident of the State of Texas who has already appeared in this matter.

4.  Plaintiff Martinek Grain & Bins, Inc. ("MGB") is a Texas corporation that has already appeared in this matter.

**PLAINTIFF'S FIRST AMENDED PETITION &**
**REQUEST FOR PERMANENT INJUNCTION – Page 1 of 13**



5. Defendant the City of Whitewright (the "City") is an incorporated town in Fannin County and Grayson County, Texas that has already appeared in this matter.

## IV. JURISDICTION & VENUE

6. The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

7. Additionally, this Court has jurisdiction over the lawsuit because, although the acts of the City which form the basis of Plaintiffs' claims are by statute governmental acts and thus normally immune from suit and/or liability, the City's immunity from suit and from liability for damages for Plaintiff's claims has been specifically waived by the legislature of the State of Texas. *See* Tex. Civ. Prac. & Rem. Code §101.0215 (a)(28) & §101.0215 (a)(29). The City's immunity has further been waived by Article 1, Section 29, of the Texas Constitution. Finally, there is no immunity as to claims under the United States Constitution because the actions of the City violate clearly established federal statutory or constitutional rights of which a reasonable person would have known.

8. Venue is proper in Grayson County under Texas Civil Practices & Remedies Code section 15.002(1)(a) because all or a substantial part of the events or omissions giving rise to the claim occurred in Grayson County, Texas.

## V. FACTS

9. MGB runs a full-service network of country elevators, warehouses, and retail feed stores designed to provide farmers and ranchers the products and support needed to plant, fertilize, harvest, store, and market their crops in the North Texas area. On January 15, 2015, MGB applied for a building permit to construct on its property at 115 East Walnut Street, Whitewright, Texas 75491 (the "Property") a diked area with two fertilizer tanks, and the

associated piping (the "Project"). The City issued to MGB commercial building permit No. 15-004 (the "Permit") allowing MGB to commence work on the Project. In its application for the Permit, MGB fully and clearly disclosed its intended use for the Property—specifically that MGB intended to build a diked area and "erect 1 fertilizer tank and install 2 fertilizer tanks w/ necessary piping."[1] MGB also paid the city at least $580.00 in consideration for the issuance of the Permit.

10.  MGB clearly had vested property interests in the Property and the Permit (and rights granted by it). From January of 2015 to November of 2016, in reliance on the Permit, Martinek and MGB immediately began expending time and money working on the Project. Nevertheless, without explanation or warning, and after MGB put almost a year and ten months' worth of money and time into the Project, on September 28, 2016, the City posted a red "STOP WORK" directive on the Property, ordering all personnel present to immediately stop all work on the Project.[2] The City then officially revoked the Permit on November 7, 2016, via letter, as follows:

> Proper zoning for grain bins (current use) is M2 per Whitewright Municipal Code. The current zoning of your property is M1. This makes the use of the location for grain bins/storage a Non-Conforming use. Per Whitewright Municipal Code Sec. 46-252:
>
> - Expansion of nonconforming *use* prohibited. No nonconforming *use* or structure may be expanded or increased beyond the lot or tract upon which such nonconforming *use* is located as of the effective date of the ordinance from which this chapter is derived, except to provide off-street loading or off-street parking space upon approval of the city council.
>
> (Ord. No. 432, § 31.2, 2-6-2001)
>
> The non-conforming use status of this parcel makes it a violation of code to expand the operation of the facility to include the storage of liquid fertilizer.
>
> As of this date, 11/07/2016, the above noted permit issued for this project is revoked and any further construction related to this project will be in violation of Whitewright Municipal Code.

---

[1] *See* Ex. A.
[2] This Stop Work Order apparently was issued after John Simon, a City councilmember, raised the issue of MGB's zoning for the Project at a September 26, 2016, Council meeting.

**PLAINTIFF'S FIRST AMENDED PETITION &
REQUEST FOR PERMANENT INJUNCTION – Page 3 of 13**

Despite the City being *fully appraised for a year and ten months* of MGB's intended use of the Property, MGB had no prior notice of these alleged zoning issues or that the City was even targeting MGB's Permit for revocation. Nor was MGB given an opportunity to be heard before the decision to issue the Stop Work order or to revoke the Permit was made.

11. MGB, to its detriment in completing the Project and enjoyment of use of its Property, ceased work in response to the City's stop work order. MGB's Mark Millar later attended a City council meeting in December of 2016 to discuss the stop work order and Permit revocation. He was informed that the Permit purportedly should never have been issued (again, despite the Permit Application clearly and plainly disclosing MGB's intended use for the Property) and that MGB would have to take up the issue with the Planning and Zoning Committee. In response, MGB sent the zoning board a letter on January 11, 2017, requesting that the City change its zoning to allow MGB to continue to using the Property as before. Mr. Millar (and Mr. Martinek) also attended a special Planning and Zoning Committee meeting to advocate for the requested change. However, they refused to make the requested change to the Property's zoning or otherwise issue a permit allowing MGB's prior use to continue.

12. On March 6, 2017, Martinek and MGB, through their attorneys, submitted a formal demand to the City to reinstate the Permit so that construction on the Project could continue in accordance with the Permit, and informing the City that failure to reinstate the Permit would lead to litigation. *See* Ex. B. The City failed to respond to the demand letter or to reinstate the Permit. The City, however, was not content with merely taking away the Plaintiffs' Permit rights. In what can only be described as possible retaliation for Plaintiffs' assertion of their rights in the March 6 letter, on May 15, 2017, the City, acting through its police chief, sent a letter to MGB demanding that it immediately cease and desist from all grain elevator

operations on its Property and threatening imminent fines for continued operation of the grain elevator. The City claimed that MGB had violated applicable air rules and regulations from the Texas Commission on Environmental Quality ("TCEQ"), and that MGB had violated City ordinances prohibiting dissemination of dust, fumes, gas, noxious odor, smoke, glare, or other atmospheric influence. However, the City failed to provide a shred of evidence showing any such violations, the finality of such violations, or otherwise that the City's air quality had been negatively affected by the grain elevator operations, and further failed to show that it had any legal basis to enforce TCEQ rules in the first instance. Once again, the City acted without providing Plaintiffs due process, notice, or an opportunity to respond to or cure these "violations" before taking an action that plainly interfered with MGB's property rights.

13. Additionally, the recorded minutes for the Planning and Zoning Committee and City Council meetings have shown: (1) the councilmember who originally raised the MGB zoning issue with the City—John Simon—had a conflict of interest in that he served both on the City Council and Planning and Zoning Board; (2) that the grain elevators preset on the Property pre-dated the zoning the City implemented and was now using to interfere with MGB's operations; and (3) the City had a history of using zoning to derail projects that had already approved or were in the planning phase, including after work had already started. This further evidences the City's wanton bad faith in interfering with MGB's rights to the Property.

14. At the time the Permit was revoked, Martinek / MGB had expended at least $93,216.21 in planning and construction costs related to the Project, and countless hours of employee time working on the Project. Martinek and MGB also continue to lose money and goodwill through an inability to satisfy customer demands as a result of the Project being incomplete.

## VI. CAUSES OF ACTION

### COUNT 1: PROMISSORY ESTOPPEL

15.  Plaintiffs incorporate by reference the factual statements set forth in the preceding and subsequent paragraphs as if set forth verbatim.

16.  As outlined above, the City issued the Permit to MGB, and thus promised MGB that it would allow MGB to construct the Project.

17.  In reliance on the City's promise, Plaintiffs expended time and monies in furtherance of the Project. Specifically, Plaintiffs purchased materials and equipment, and hired vendors to perform work on the Project, and invested its employee's time into the Project.

18.  The City knew, or reasonably should have known, that Plaintiffs would rely on the City's promises (i.e., the Permit) in undertaking these actions. In fact, MGB was required by law to seek and obtain the City's permission for the Project. MGB sought such permission, and having obtained it, expended the resources described above in furtherance of the Project.

19.  Injustice to Plaintiffs can be avoided only if the City's promise is enforced.

20.  Plaintiffs' reliance on the City's promise resulted in injury to Plaintiffs, which caused them at least $93,216.21 in damages for monies expended on the Project, in addition to damages for lost profits as the result of Plaintiffs inability to make use of the completed Project, and lost employee time working on the Project.

21.  <u>Attorney Fees</u>.  Plaintiffs are entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code Chapter 38.001(8) because this is a suit for promissory estoppel. Plaintiffs retained counsel, who presented their claim to the City's duly authorized agent on March 6, 2017, and the City did not cure the injury within thirty (30) days after the claim was presented.

## COUNT 2: VIOLATION OF THE TEXAS CONSTITUTION, ARTICLE 1, SECTION 17—REGULATORY TAKING (INVERSE CONDEMNATION)

22. Plaintiffs incorporate by reference the factual statements set forth in the preceding and subsequent paragraphs as if set forth verbatim.

23. After applying for and submitting all legally required paperwork, fees, and/or bonds to obtain a permit for the Project, the City approved the application and issued the Permit. Then, without notice or explanation, the City revoked the Permit, and has refused to reinstate it despite reasonable requests to do so.

24. At all times, Plaintiffs, as exclusive owners of the Property, had a vested interest in the Property, which was to undergo improvements as part of the Project. Plaintiffs also had a vested interest in the Permit and the rights granted by it.

25. By revoking the Permit, the City has unreasonably interfered with Plaintiffs' rights to use and enjoy the Property, including Plaintiffs' investment-backed expectations in the Property and the Project. The City's actions have prevented Plaintiffs from putting the Property to use in an economically viable endeavor, leaving Plaintiffs in effect with a token interest in the Property. The City's revocation of the Permit was an intentional exercise of its authority, and resulted in the taking, damaging, or destruction of the Plaintiffs' Property, for public use. *E.g.*, *Starbright Car Wash LLC v. City of Belton*, No. 14-18-00261-CV, 2019 WL 6711398, 2019 Tex. App. LEXIS 10659, at \*\*5–7 (Tex. App.—Houston [14th Dist.] Dec. 10, 2019, no pet.). Thus, the actions of the City in revoking the Permit amount to a regulatory taking (inverse condemnation) of Plaintiffs' Property without just compensation in a violation of Article 1, section 17, of the Texas Constitution.

26.  The City's actions in barring grain elevator operations on the Property served as another regulatory taking (inverse condemnation) of Plaintiffs' Property without just compensation in a violation of Article 1, section 17, of the Texas Constitution.

27.  The City acted in bad faith in its interactions with Plaintiffs as they relate to the Property, the Project, the Permit and the later retaliation against Plaintiffs by demanding they cease and desist from grain elevator operations on the Property.

28.  The takings alleged above caused Martinek at least $93,216.21 in damages for monies expended on the Project, in addition to damages for lost profits as the result of Martinek's inability to make use of the completed Project, lost employee time working in the Project, lost profits from lost grain elevator operations, and lost value of the Property itself.

### COUNT 3: VIOLATION OF THE UNITED STATES CONSTITUTION, FIFTH AMENDMENT—REGULATORY TAKINGS

29.  Plaintiffs incorporate by reference the factual statements set forth in the preceding and subsequent paragraphs as if set forth verbatim.

30.  The actions of the City as described in Count 2 also amount to regulatory takings (inverse condemnations) of Plaintiffs Property without just compensation in violation of the Fifth Amendment of the United States Constitution.

31.  Plaintiffs were entitled to compensation for the taking as soon as the City took the Property away from Plaintiffs. They were not required to exhaust any administrative or state remedies prior to being entitled to compensation for the taking under the United States Constitution. *See Knick v. Twp. of Scott*, No. 17-647, 2019 WL 2552486, 2019 U.S. LEXIS 4197, 139 S. Ct. 2162, 2170 (2019).

### COUNT 4: VIOLATION OF THE TEXAS CONSTITUTION, ARTICLE 1, SECTION 19—DUE COURSE

32. Plaintiffs incorporate by reference the factual statements set forth in the preceding and subsequent paragraphs as if set forth verbatim.

33. Plaintiffs were deprived of their property when the City revoked the Permit and stopped MGB's operations on the Property by posting a "Stop Work" tag at the Property that stated "permit expired" and "zone compliance." The tag did not provide Plaintiffs with notice that they were expected to stop work in the future, but rather required that Plaintiffs immediately cease operations. Further, the tag offered Plaintiffs no opportunity to be heard regarding the allegations that served as the basis for the Stop Work order.

34. Similarly, the Permit was subsequently revoked by letter on November 7, 2016. Before the letter was mailed, the City did not provide Plaintiffs with notice of the impending revocation, nor did it offer Plaintiffs an opportunity to be heard until *after* the revocation.

35. Finally, the City unilaterally and without prior notice or an opportunity to be heard, ordered Plaintiffs to cease longstanding operations on their Property in retaliation for Plaintiffs' complaints and legal assertions regarding its prior acts as described above.

36. The actions described above amounts to an unconstitutional deprivation of the due course of law in violation of Article 1, section 19 of the Texas Constitution.

### COUNT 5: VIOLATION OF THE UNITED STATES CONSTITUTION, FOURTEENTH AMENDMENT, SECTION 1—DUE PROCESS

37. Plaintiffs incorporate by reference the factual statements set forth in the preceding and subsequent paragraphs as if set forth verbatim.

38. The City's actions as described in Count 4 also amount to an unconstitutional deprivation of due process under the United States Constitution.

## COUNT 6: VIOLATION OF 42 U.S.C. § 1983

39. Plaintiffs incorporate by reference the factual statements set forth in the preceding and subsequent paragraphs as if set forth verbatim.

40. Plaintiffs have been deprived of their federal constitutional rights under color of state law. The Building Official, Zoning and Permit personnel, and the City Council, acted as officials of the City of Whitewright at all relevant times. The officials were clothed with the authority of the City when they acted to revoke the Permit.

41. The City, by and through its officials, acted under color of state law when it deprived Plaintiffs of the Permit and of their fair use of their Property, all without notice and opportunity to be heard, in violation of the Texas and United States Constitutions. The deprivation occurred in accordance with the ordinances, regulations, customs or usages of the City.

42. The City's actions in revoking Plaintiffs Permit and depriving them of fair use of their Property were reckless and callously indifferent to their federally protected property rights, which entitles Plaintiffs to actual damages under § 1983.

43. Plaintiffs suffered a deprivation of their rights as soon as the taking occurred, and were not required to exhaust any administrative or state remedies prior to being entitled to a remedy under § 1983. *See Knick*, 139 S. Ct. at 2170–73.

44. The City's conduct was motivated by evil motive or intent and / or involved reckless or callous indifference to the federally protected rights of Plaintiffs. Plaintiffs accordingly request punitive damages, in addition to equitable remedies. *See Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiffs further requests their attorneys' fees under 42 U.S.C. § 1988.

## VII. PERMANENT INJUNCTION

45. Plaintiffs incorporate by reference the factual statements set forth in the preceding and subsequent paragraphs as if set forth verbatim.

46. The City revoked the Permit without notice or explanation and failed to reinstate the Permit despite reasonable requests from Plaintiffs. Plaintiffs accordingly seek a permanent injunction from this Court requiring the City to immediately reinstate the Permit, refrain from revoking the Permit in the future without notice to Plaintiffs and a reasonable opportunity to cure any issues that the City may use to purportedly support revocation, restore Plaintiffs' rights to operate a grain elevator on the Property, and refrain from barring grain elevator operations on the Property, refrain from barring grain elevator operations in the future without notice to Plaintiffs and a reasonable opportunity to cure any issues that the City may use to purportedly support such a bar.

47. Before the revocation of the Permit, MGB was providing local farmers with grain and liquid fertilizer. While MGB's operations are in flux, its customers are contracting with other providers of grain and liquid fertilizer. The damage to Martinek's reputation as a consistent, reliable vendor is accordingly irreparable with monetary damages.

48. Without the permanent injunctive relief sought, the City will continue to deny the reinstatement of the Permit and interfere with Plaintiffs' grain elevator operations. This will cause Plaintiffs irreparable injury, for which there is no other adequate remedy.

49. The City's continued actions further threaten irreparable injury to the Property and its value, thus entitling Plaintiffs to injunctive relief. Moreover, the principles of equity and the laws of the State of Texas entitle Plaintiffs to the relief sought.

50. All prerequisites to injunctive relief have been met.

## VIII. CONDITIONS PRECEDENT

51. All conditions precedent to Plaintiffs' rights to recover and Defendant's liability have been performed or have occurred, or have been waived by the City.

## IX. JURY DEMAND

52. Plaintiffs hereby demand a jury trial.

## X. PRAYER

53. For these reasons, Plaintiffs Donald Martinek and Martinek Grain & Bins, Inc. ask that the Court issue citation for Defendant the City of Whitewright to appear and answer, and that Plaintiffs be awarded a judgment against the City for the following:

   a. Actual damages, including but not limited to lost profits;

   b. Punitive damages;

   c. A permanent injunction requiring the City to reinstate the Permit;

   d. Prejudgment and postjudgment interest;

   e. Attorney fees;

   f. Court costs; and

   g. All other relief to which Plaintiffs are entitled.

Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

By: /s/ Joseph D. Zopolsky
Joseph D. Zopolsky
State Bar No. 24033500
James C. Erdle, Jr.
State Bar No. 24069680
Bradford K. Burdette
State Bar No. 03364700
Aaron A. Martinez
State Bar No. 24068629

14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449
(972) 419-8300
(972) 419-8329 facsimile
jzopolsky@gpm-law.com
jerdle@gpm-law.com
bburdette@gpm-law.com
amartinez@gpm-law.com

COUNSEL FOR PLAINTIFFS
DONALD MARTINEK, &
MARTINEK GRAIN & BINS, INC.

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served upon all counsel of record in the above-captioned cause, pursuant to TEX. R. CIV. P. 21a on this the 28th day of February, 2020, by:

| | |
|---|---|
| Hand Delivery: | _____ |
| Certified Mail: | _____ |
| Fax Transmittal: | _____ |
| E-Mail: | ___XX___ |

/s/ Joseph D. Zopolsky
Joseph D. Zopolsky